**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

JULIUS SCOTT TURNER #N3460                                      PETITIONER

VERSUS                                      CIVIL ACTION NO. 1:19-cv-52-HSO-MTP

JOE ERRINGTON, *et al*.                                      RESPONDENTS

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on Julius Scott Turner's Petition for Writ of Habeas Corpus [1] and Motion for Judgment on the Pleadings [13]. After careful consideration of the parties' submissions and the applicable law, the undersigned recommends that the Motion [13] be denied and the Petition [1] be dismissed.

## BACKGROUND

On September 18, 2012, Turner was charged with possession with intent to distribute a controlled substance and possession of a firearm by a convicted felon in the Harrison County Circuit Court. R. [8], Ex. A at 10. On February 11, 2014, the indictment was amended to charge Turner as an habitual offender.[1] *Id*. at 12-13. On the same day, Turner pleaded guilty to both counts in the indictment. *Id*. at 14. He was sentenced to ten years for Count I- possession of a controlled substance with intent to distribute, and twelve years for Count II- unlawful possession of a fireman by a convicted felon. *Id*. at 15. The counts were to run concurrently for a total of twelve years in prison. *Id*.

---

[1] Turner was convicted in 2002 of receiving stolen property and in 2004 of robbery. R. [8], Ex. A at 12-13.

On February 13, 2015, Turner filed a Motion for Post-Conviction Collateral Relief ("PCCR") in the Harrison County Circuit Court. *Id*. at 16. He raised the following issues in his PCCR motion:

I.     Turner's plea was involuntary.

II.    Turner received ineffective assistance of counsel.

III.   Turner's sentence was illegal because the documents reflecting his status as a habitual offender were not properly authenticated.

IV.    The evidence from the search of Turner's residence was illegally obtained, there was insufficient evidence to convict him, and he was never provided the opportunity to confront the confidential informant used in the investigation of his case.

The Harrison County Circuit Court denied Turner's PCCR motion on November 28, 2016. *Id*. at 147-150. The circuit court held that Turner's plea was voluntary, that Turner failed to establish that his counsel was ineffective, and that the State provided evidence of his prior convictions which made his sentence as a habitual offender proper. *Id*. at 148-49. The circuit court further held that Turner's general constitutional claims, such as challenges to the search warrant or insufficient evidence, were waived as a result of his valid guilty plea. *Id*. at 149-150.

On December 9, 2016, Tuner appealed the Harrison County Circuit Court's denial of post-conviction relief. R. [8], Ex. B at 2. Turner raised the following issues in his brief to the Mississippi Court of Appeals (as stated by the Petitioner):

I.     Whether Appellant's guilty plea was made involuntarily.

II.    Whether counsel's assistance was ineffective.

III.   Whether there has been intervening decisions of the U.S. Supreme Court or Mississippi Supreme Court which would have actually adversely affected the outcome of his conviction or sentence or that he has evidence not reasonably discovered at the time of trial which is of such nature that it would be practically conclusive that had such been introduced at trial it would have caused a different result in the conviction and sentence.

IV.    Whether there has been U.S. Constitutional and Mississippi Constitutional violations.

V.    Whether there has been a denial of due process and equal protection of law by reprisal for exercising Appellant's rights.  R. [8], Ex. F at 7.

The Mississippi Court of Appeals affirmed the Harrison County Circuit Court's denial of post-conviction relief on May 8, 2018.  *See Turner v. State*, 262 So. 3d 547 (Miss. Ct. App. 2018); *see also* Resp. [7], Ex. A.  The Court of Appeals held that Turner's guilty plea was voluntary, his counsel's performance was not ineffective, and his other constitutional claims were procedurally barred and without merit.  *See id*.

On June 14, 2018, Turner filed a Motion for Rehearing with the Mississippi Court of Appeals.  R. [8], Ex. G at 22.  The Motion for Rehearing was denied on October 9, 2018.  *Id*. at 21.

On November 9, 2018, Turner filed a Petition for Writ of Certiorari with the Mississippi Supreme Court.  *Id*. at 8.  On January 16, 2019, the Mississippi Supreme Court denied Turner's Petition for Writ of Certiorari.  *Id*. at 7.

Turner filed the instant Petition for Writ of Habeas Corpus [1] on February 19, 2019.  A Response [7] was filed on May 9, 2019, along with the state court record.  *See* R. [8].  On May 28, 2019, Turner filed his Reply [9] and Memorandum in Support of Reply [10].

On June 27, 2019, Respondents filed a Sur-Reply to address Turner's request for an evidentiary hearing raised in the Reply [9].  *See* [11].  On July 23, 2019, Turner filed a Response in Opposition [12] to the Sur-Reply [11].  This matter is now ripe for review.

**ANALYSIS**

**<u>Petition for Writ of Habeas Corpus</u>**

Petitioner raises several grounds for review in his Petition [1] and seeks immediate release from the custody of the Mississippi Department of Corrections. Pet. [1] at 21. The Court reviews these arguments using the standard set forth in 28 U.S.C. § 2254(d) which states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgement of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Turner asserts mixed questions of law and fact regarding his conviction; therefore, subsection (d)(1) applies. *See Morris v. Cain*, 186 F.3d 581, 584 (5th Cir. 1999) (discussing how to apply 28 U.S.C. § 2254(d)). The clauses in § 2254(d)(1) "contrary to" and "unreasonable application" have independent meanings. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A decision from a state court is "contrary to" Supreme Court precedent only if it reaches a conclusion opposite one reached by the Supreme Court on an issue of law, or if the state court encounters materially indistinguishable facts from those at play in a Supreme Court decision and the state court reaches an opposite result. *Id*.

The definition of "unreasonable application" is different. This clause is implicated when a "state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. This Court must consider if the state court's application of the law

was objectively unreasonable. *Id.* "An unreasonable application of federal law is different from an incorrect or erroneous application of federal law." *Id.* at 412.

"Habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-103 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979) (Stevens, J., concurring in judgment)). Federal courts do not sit as "super" state supreme courts and may decide the issues presented by the habeas corpus petition "only to the extent that federal constitutional issues are implicated." *Smith v. McCotter*, 786 F.2d 697, 700 (5th Cir. 1986).

**Ground One: Whether Turner's guilty plea was voluntary.**

Turner pleaded guilty to Counts I and II in the indictment. He claims, however, that this plea was involuntary. He submits that his court-appointed counsel pressured him into pleading guilty, and that his attorney enlisted the help of his family to convince him to plead guilty.[2] He also believed that he could not receive a fair trial because his attorney was incompetent. *See* Pet. [1] at 3.

The following colloquy occurred when Turner pleaded guilty:

THE COURT:    All right, Mr. Turner, you've already told me that you can read and write, that you've read the petition, you understood it, you discussed it with your lawyer, and your lawyer's answered any and all questions; is that right, sir?

THE DEFENDANT:    Yes, sir.

THE COURT:    So you must be aware of the fact that when one pleads guilty, you waive and give up certain constitutional rights, because those constitutional rights are contained in paragraph five of your petition to plead guilty; is that right, sir?

---

[2] Petitioner submitted an affidavit from his father which states "Attorney Mr. Rischel, did in fact ask me to help him persuade[] my son into pleading guilty to the charge…." Pet. [1], Ex. B at 34.

THE DEFENDANT:    Yes, sir.

\*\*\*

THE COURT:    Do you understand by pleading guilty, you're waiving and forever giving up each and every one of the rights we just went over?

THE DEFENDANT:    Yes, sir.

THE COURT:    And is that what you wish to do?

THE DEFENDANT:    Yes, sir.

THE COURT:    Did anyone use any force, threats, coercion, intimidation or place you in any type of duress to induce you into pleading guilty here today?

THE DEFENDANT:    No, sir.

\*\*\*

THE DEFENDANT:    Your Honor, the police came in the yard, and I was outside my truck, and my cousin was in my truck. And the dope that was in the car was mines. And the gun was in the house. That was mines. I used it for protection because my house got robbed, but, you know –

\*\*\*

THE COURT:    And you knew you weren't supposed to have a gun?

THE DEFENDANT:    Yes, sir.

\*\*\*

THE DEFENDANT:    Your Honor, I know that the cops came found the gun, and they arrested me and charged me with possession of a firearm and possession of the dope.

THE COURT:    What dope? What kind was it, cocaine?

THE DEFENDANT:    Crack cocaine.

THE COURT:    Schedule II; is that right?

THE DEFENDANT:    Yes, sir.

THE COURT:    What were you going to do with the cocaine?

6

THE DEFENDANT:     Sell it. 602 Tegarden Road.

\*\*\*

THE COURT:     Are you telling me the plea you wish to enter here today is a free and voluntary plea?

THE DEFENDANT:     Yes, sir.

THE COURT:     And is it your decision and your decision alone to plead guilty?

THE DEFENDANT:     Yes, sir.

THE COURT:     You understand that Mr. Rishel, as your lawyer, is obligated and obliged to consult, to confer, and to advise you, but the decision to plead guilty must be yours and yours alone?

THE DEFENDANT:     Yes, sir.

THE COURT:     Do you understand that? And is it your decision and your decision alone to plead guilty to Counts I and Counts II?

THE DEFENDANT:     Yes, sir.

R. [8], Ex. D at 80-91.

"The validity of a guilty plea is a question of law…."  *United States v. Hernandez*, 234 F.3d 252, 254 (5th Cir. 2000) (citing *United States v. Amaya*, 111 F.3d 386, 388 (5th Cir. 1997)). "A plea of guilty is constitutionally valid only to the extent it is voluntary and intelligent." *Bousley v. United States*, 523 U.S. 614, 618 (1998) (citation and internal quotations omitted).  To be knowing and intelligent, the defendant must have "a full understanding of what the plea connotes and of its consequences."  *Boykin v. Alabama*, 395 U.S. 238, 244 (1969). "A guilty plea will be upheld on habeas review if entered into knowingly, voluntarily, and intelligently." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000).

The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action. *Brady v. United States*, 397 U.S. 742, 757 (1970).

After reviewing Turner's plea colloquy, the Mississippi Court of Appeals held that:

The record shows that Turner was advised of the nature of the charges against him and the consequences of a guilty plea. Turner was further advised that by pleading guilty, he was waiving certain constitutional rights. Importantly, Turner stated his guilty plea was not the result of any force, threats, coercion, or intimidation. Instead, Turner stated he was pleading guilty because he committed both crimes. *Turner*, 262 So. 3d at 551.

The record demonstrates that Turner knowingly pleaded guilty and stated in the plea colloquy that it was his decision to plead guilty. "[Plaintiff] was advised by competent counsel, he was made aware of the nature of the charge[s] against him, and there was nothing to indicate that he was incompetent or otherwise not in control of his mental faculties." *Brady,* 397 U.S. at 756.

It was reasonable for the Mississippi Court of Appeals to rely on Turner's statements in open Court when he knowingly and voluntarily admitted to the crimes. *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) ("Solemn declarations in open court carry a strong presumption of verity, forming a formidable barrier in any subsequent collateral proceeding") (internal quotations omitted). Turner has not established that the Mississippi Court of Appeals' decision on this issue was contrary to, or an unreasonable application of clearly established federal law, and he is not entitled to habeas relief on the claim that his plea was involuntary.

**Ground Two: Whether Turner's counsel was ineffective.**

Turner submits that his counsel was ineffective, such that he would not have pleaded guilty if he had been more confident in his attorney's abilities.   He specifically argues that: (1) counsel failed to conduct an independent investigation; (2) counsel was "hostile to the facts of affirmative defenses" and failed to consider defenses to the charges; and (3) counsel failed to lodge objections during a pre-trial motions hearing.  Pet. [1] at 5.

To establish ineffective assistance of counsel, a defendant must demonstrate that his trial counsel's performance fell below an objective standard of reasonableness and that this deficient performance prejudiced his defense.  *Strickland v. Washington*, 466 U.S. 668, 690-91 (1984). Failure to establish either prong defeats the claim.  *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).  A court must presume that "counsel's conduct [fell] within the wide range of reasonable professional assistance," and a defendant is required to overcome that presumption. *Strickland*, 466 U.S. at 689.  To demonstrate prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.

"Surmounting *Strickland's* high bar is never an easy task."  *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).  "An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve."  *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (internal quotations and citation omitted).

In habeas review, federal courts take a highly deferential look at counsel's performance through the lens of § 2254(d).  *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011).  To succeed,

Turner must demonstrate that it was unreasonable for the Mississippi Court of Appeals to hold that he had "failed to show that his counsel's performance was deficient and that the alleged deficient performance prejudiced his defense." *Turner*, 262 So. 3d at 552.

Turner first asserts that his attorney never "made an independent investigation into the case whatsoever" and "was hostile to the facts of affirmative defenses." Pet. [1] at 5. After considering this argument, the Mississippi Court of Appeals held that:

> [T]he plea-hearing transcript shows Turner advised the trial court, under oath, that he was satisfied with the services of his counsel, that his counsel had taken the time to familiarize himself with the facts and circumstances of his case, and had explained the elements of the charged crimes as well as any possible defenses he might have to those charges. Additionally, the signed plea petition indicates Turner was "satisfied with the advice and help [his] lawyer ha[d] given." Turner fails to offer any evidence of his ineffective-assistance-of-counsel claim beyond the unsupported assertions in his brief that a police officer lied and fabricated evidence in order to convict him. However, such bare assertions are insufficient. *Turner*, 262 So. 3d at 552.

"An attorney has a duty to independently investigate the charges against his client." *Bower v. Quarterman*, 497 F.3d 459, 467 (5th Cir. 2007) (citation omitted). But counsel "is not required to pursue every path until it bears fruit or until all conceivable hope withers." *Washington v. Watkins*, 655 F.2d 1346, 1356 (5th Cir. 1981) (citation omitted). As the Fifth Circuit has cautioned, courts "must be particularly wary of 'argument[s] [that] essentially come[] down to a matter of degrees. Did counsel investigate enough? Did counsel present enough mitigating evidence? Those questions are even less susceptible to judicial second-guessing." *Dowthitt v. Johnson*, 230 F.3d 733, 743 (5th Cir. 2000) (citation omitted) (brackets in original). "To establish that an attorney was ineffective for failure to investigate, a petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial." *Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005).

Petitioner does not explain what his counsel should have done that would have resulted in a different or better outcome for him.[3]  Turner filed a motion for a continuance the day before he was scheduled to go to trial and prior to entering his plea because he was not satisfied with his counsel's performance.  *See* R. [8], Ex. A at 45.  He stated he had multiple visitations with his attorney prior to trial and asked his attorney to investigate "certain situations pertaining to the case" and his attorney did not investigate to his satisfaction.  *Id.*  It remains unclear what "situations" counsel should have investigated and how that would have prevented Turner from pleading guilty.

The Mississippi Court of Appeals held that Turner's counsel was sufficiently informed about Turner's case and explained the possible defenses to the charges.  Additionally, the court of appeals noted that Turner's signed plea, executed on February 11, 2014, reflected that he was satisfied with the advice and help of his lawyer.[4]  *See* R. [8], Ex. C at 14-15.  The Mississippi Court of Appeals' holding complies with the standard articulated in *Strickland*.  Nothing indicated that counsel's performance or investigation "fell below an objective standard of reasonableness," nor has Plaintiff demonstrated any prejudice stemming from this alleged failure.  *Strickland*, 466 U.S. at 688.  This holding was not contrary to, nor did it involve an unreasonable application of, clearly established federal law.

---

[3] The undersigned notes that before pleading guilty, Turner's counsel filed several motions, including a motion to suppress evidence that the State confessed.  *See* R. [8], Ex. D at 4-5.

[4] The plea agreement states "I have told my lawyer all the facts and circumstances known to me about the charges against me.  I believe that my lawyer is fully informed on all such matters.  My lawyer has counseled and advised me on the nature of each charge; on any and all lesser included charges; and on all possible defenses that I might have in this case."  R. [8], Ex. C at 14.  "I believe that my lawyer has done all that anyone could do to counsel and assist me.  I am satisfied with the advice and help my lawyer has given me."  *Id.* at 15.

Turner also asserts that his attorney failed to lodge objections during a pre-trial hearing. Pet. [1] at 5.  He asserts that his attorney should have objected to testimony from Detective Timothy Adams during a pre-trial motion hearing because he believed the detective was lying and the detective improperly relied on a confidential informant. Pet. [1] at 5.[5]  Turner argues objections were "seriously necessary… to stop incriminating testimony."  *Id*. at 8.

The Mississippi Court of Appeals considered this argument and held that "Turner further claims his counsel failed to make certain objections.  However, counsel's choice of whether or not to file certain motions … or make certain objections falls within the ambit of trial strategy and cannot give rise to an ineffective assistance of counsel claim."  *Turner*, 262 So. 3d at 552 (internal quotations and citation omitted).

Even when counsel has a sound basis to object, the "failure to object to the admission of inadmissible evidence is not necessarily ineffective."  *Rose v. Johnson*, 141 F. Supp. 2d 661, 683 (S.D. Tex. 2001) (quoting *Morris v. State of California*, 966 F.2d 448, 456 (9th Cir. 1991)).  The failure to object may be a "matter of trial strategy to which [courts] will not second guess counsel."  *Burnett v. Collins*, 982 F.2d 922, 930 (5th Cir. 1993).

"Even if counsel had objected and the objections had been sustained, [Turner] cannot show that the outcome… would have been different," particularly because he pleaded guilty. *Smith v. King*, 2011 WL 3684505, at *5 (S.D. Miss. Aug. 2, 2011).  Turner's bare assertion that the detective was lying during the pre-trial motions hearing does not necessitate an objection from his counsel and does not "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  *Strickland*, 466 U.S. at 689.  Turner

---

[5] A review of the motions hearing transcript illustrates that Turner's counsel engaged in vigorous cross-examination of Detective Adams.  *See* R. [8], Ex. D.

has not demonstrated that his counsel's performance was deficient during the pre-trial motions hearing, and even if such deficiency had been shown, Turner failed to establish prejudice. The Mississippi Court of Appeals' holding that Turner's counsel acted within his discretion and decided to forgo certain objections was not contrary to, nor did it involve an unreasonable application of, clearly established federal law.

**Ground Three: Whether Turner's habitual offender sentence is proper.**

Turner also asserts that his sentence as a habitual offender under Miss. Code Ann. § 99-19-81 is improper because the State failed to properly certify the documents used to prove his prior convictions. In Turner's words "the individual which performed the certification never testified as to the truthfulness of the findings." Pet. [1] at 7. He submits that he should have been afforded an opportunity to confront the individual who prepared the documents, as required by the Confrontation Clause of the Sixth Amendment to the United States Constitution.[6]

Turner presented this issue to the Mississippi Court of Appeals, which held that "self-authenticating records of a defendant's prior convictions are not testimonial evidence, and do not trigger a defendant's constitutional right to confront witnesses. Indeed, the certification of the documents indicates that the custodian of the records swore that the documents were true and correct copies, not that Turner actually committed any act. Accordingly, we find this issue without merit." *Turner*, 262 So. 3d at 552 (internal quotations and citations omitted).

"The Sixth Amendment to the United States Constitution, made applicable to the States via the Fourteenth Amendment … provides that '[i]n all criminal prosecutions, the accused shall enjoy… the right to be confronted with the witnesses against him.'" *Melendez-Diaz v.*

---

[6]Turner initially asserted that *Bullcoming v. New Mexico*, 564 U.S. 647 (2011) was an intervening decision of law. Turner, however, pleaded guilty in 2014— three years after the *Bullcoming* decision.

13

*Massachusetts*, 557 U.S. 305, 309 (2009).  Turner argues that this includes the right to confront the custodian who certified the records that documented his prior criminal convictions.

The Supreme Court, however, has held that "[b]usiness and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because— having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial— they are not testimonial."  *Melendez-Diaz*, 557 U.S. at 324.  "To qualify as 'testimonial'… 'a statement must have a primary purpose of establishing or proving past events potentially relevant to later criminal prosecution.'"  *United States v. Noria*, 945 F.3d 847, 851-52 (5th Cir. 2019) (quoting *Bullcoming v. New Mexico*, 564 U.S. 647, 659 n.6 (2011)).  "Thus, business and public records are generally not testimonial because they are created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial."  *Id*. at 852 (internal quotations and citation omitted).

"[A] routine certification by the custodian of a domestic public record… [is] not testimonial in nature.  Not only are such certifications a routine cataloguing of unambiguous factual matters … but requiring the records custodian and other officials from various states and municipalities to make themselves available for cross-examination in the countless criminal cases heard each day in our country would present a serious logistical challenge without any apparent gain in the truth-seeking process."  *United States v. Weiland*, 420 F.3d 1062, 1077 (9th Cir. 2005) (internal quotations and citations omitted);  *see also United States v. Causevic*, 636 F.3d 998, 1002 (8th Cir. 2011) (criminal judgments may be admitted to show that a defendant has a prior conviction without violating the Confrontation Clause); *Trahan v. Director, TDCJ-CID*, 2016 WL 7443260, at *4 (E.D. Tex. July 28, 2016) (admission of "pen packet" that contained records of defendant's prior convictions did not violate the Confrontation Clause).

The Mississippi Court of Appeals' holding on this issue was correct. The records of Turner's prior convictions were public records and the certification of those records was not testimonial in nature. Therefore, the admission of these records did not violate the Confrontation Clause. Turner is not entitled to habeas relief on this issue.

**Ground Four and Five: Whether various constitutional rights were violated and whether Turner waived his constitutional claims when he pleaded guilty.**

In Ground Four and Five in his Petition [1], Turner generally argues that he is imprisoned in violation of his constitutional rights. While the claims are not entirely clear, he seems to argue that he was denied the right to confront the confidential informant in his case, the evidence against him consisted of "false testimony fabrications," evidence was illegally seized, and certain evidence obtained pursuant to the search was "mixed" with evidence seized from another location. Pet. [1] at 8-17. He also argues that he was denied his right to due process and equal protection because he was "the victim of reprisal from Honorable Judge Lawrence P. Bourgeois because his petition for PCCR stayed on the circuit court docket for over a year." *Id*. at 18.[7]

The Mississippi Court of Appeals considered Turner's remaining constitutional arguments and held that any such rights were waived when he voluntarily pleaded guilty. The court held:

> If a defendant pleads guilty to committing the charged offense, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea… By pleading guilty to the charged offenses, Turner's claim is procedurally barred. Notwithstanding the procedural bar, we find Turner's constitutional claims fail. Not only are these claims made without any supporting evidence, they are all contradictory to Turner's

---

[7] Liberally construing the pleadings, Turner appears to argue that the trial court judge was unfair to him when his post-conviction motion was considered because Turner previously filed a writ of mandamus with the Mississippi Supreme Court in an effort to force the trial court to address his post-conviction motion. This argument does not relate to Turner's underlying conviction or to the Mississippi Court of Appeals opinion, which held that he was not entitled to relief.

testimony in the record.  Accordingly, we find this issue is without merit.  *Turner*, 262 So. 3d at 553 (internal quotations and citations omitted).

"It has long been the case that a valid guilty plea bars habeas review of most non-jurisdictional claims alleging antecedent violations of constitutional rights."  *Matthew v. Johnson*, 201 F.3d 353, 364 (5th Cir. 2000); *see also United States v. Diaz*, 733 F.2d 371, 376 (5th Cir. 1984) (a valid guilty plea waives all nonjurisidcitional defects in the proceedings against a defendant); *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000).  "Among claims not barred are those that challenge the very power of the State to bring the defendant into court to answer the charge against him… and those that challenge the validity of the guilty plea itself."  *Matthew*, 201 F.3d at 364 (internal quotations and citation omitted).

As discussed above, Turner's guilty plea was voluntarily and intelligently made.  He was informed of the consequences of pleading guilty and testified that he committed the crimes he was charged with in the indictment.  Turner's valid guilty plea precludes him now from raising constitutional issues regarding his criminal proceedings because a guilty plea is "a break in the chain of events which has preceded it in the criminal process."  *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).  Any such claims are now barred.

Turner has not demonstrated that he is entitled to habeas relief based on the litany of state and federal constitutional violations he generally raises in Grounds Four and Five of his Petition [1].  The Mississippi Court of Appeals' decision that Turner waived any further constitutional claims was not contrary to, or an unreasonable application of, clearly established federal law.  Ground Four and Five of Turner's Petition [1] are without merit.

**Evidentiary Hearing**

Turner further submitted in his Reply [9] that an evidentiary hearing is necessary because there is "a lack of evidence for presumption of correctness."  Reply [9] at 1.  A habeas petitioner

is not entitled to discovery as a matter of course. *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).

28 U.S.C. § 2254(e)(2) governs evidentiary hearings in habeas matters and states:

> **(2)** If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> > **(A)** the claim relies on—
> >
> > > **(i)** a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> > >
> > > **(ii)** a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> >
> > **(B)** the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

The arguments raised in the Petition [1] do not invoke a new rule of constitutional law that has been made retroactive on collateral review. 28 U.S.C. § 2254(e)(2)(a)(i).[8]  Nor does Petitioner rely upon a factual predicate that could not have been previously discovered through due diligence.  28 U.S.C. § 2254(e)(2)(a)(ii).

While Petitioner has vigorously argued his Petition, he has not explained how an evidentiary hearing would bring forth facts that could not have been discovered previously and which show that a constitutional error occurred.  The Fifth Circuit has "repeatedly found that a paper hearing is sufficient to afford a petitioner a full and fair hearing on the factual issues underlying the petitioner's claims." *Clark v. Johnson*, 202 F.3d 760, 766 (5th Cir. 2000).

---

[8] Turner references *Bullcoming v. New Mexico*, 564 U.S. 647 (2011).  As discussed previously, *Bullcoming* was decided before Turner pleaded guilty and it is not intervening law.

Because the elements of 28 U.S.C. § 2254(e)(2) are not satisfied, an evidentiary hearing is not necessary.

**Motion for Judgment on the Pleadings**

On February 7, 2020, Turner filed a Motion for Judgment on the Pleadings [13]. In his Motion [13], Petitioner seeks release from prison and requests that the Court vacate his conviction. Mot. [13] at 2.

"The Rules Governing Section 2254 Cases in the United States District Courts (Habeas Rules) do not contemplate motions for judgment on the pleadings." *Jones v. Quarterman*, 2008 WL 4602720, at *1 (N.D. Tex. Oct. 14, 2008). The Court may apply the Federal Rules of Civil Procedure, but the Motion for Judgment on the Pleadings [13] requests the same relief as the habeas petition. *Id.* As the Motion [13] requests the same relief as the Petition [1] and the habeas rules do not contemplate such a motion, the undersigned recommends denying the Motion [13] as improvidently filed or as moot in the event this Report and Recommendation is adopted. *See Lenhart v. Rozum*, 2013 WL 2047405, at *1 (W.D. Pa. May 14, 2013); *Bedell v. Menard*, 2018 WL 3900614, at *2 (D. Vt. July 31, 2018).

## RECOMMENDATION

For the reasons set forth above, the undersigned recommends that the Motion for Judgment on the Pleadings [13] be DENIED and the Petition for Writ of Habeas Corpus [1] be DIMISSED with prejudice.

## NOTICE OF RIGHT TO OBJECT

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the district judge, the magistrate judge and the opposing party.

The district judge at the time may accept, reject or modify in whole or part, the recommendations of the magistrate judge, or may receive further evidence or recommit the matter to this Court with instructions.  The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected.  *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

THIS the 6th day of August, 2020.

/s/ Michael T. Parker
United States Magistrate Judge